UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

VERNON P.,                                  )
                                            )
           Plaintiff                        )
                                            )
v.                                          )    No. 2:17-cv-00397-LEW
                                            )
NANCY A. BERRYHILL,                         )
Acting Commissioner of Social Security,     )
                                            )
           Defendant                        )

### RECOMMENDED DECISION ON MOTION FOR REMAND AND STATEMENT OF ERRORS[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as a construction inspector. The *pro se* plaintiff seeks remand on the bases that the ALJ ignored his neck condition, erroneously found no evidence of nerve root entrapment or impingement, relied on a failure to seek treatment for which he now offers an explanation, failed to consider the full record, and relied on notes of conversations he had with treating doctors that may not have been accurately recorded. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 21) at Page ID ## 368-72. At oral argument, the plaintiff clarified that, with respect to his second point, he contends that the ALJ erred in determining that his degenerative disc disease did not meet Listing 1.04 of Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings").

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Finally, the plaintiff attaches 50 pages of documents to his statement of errors, a number of which are medical records postdating the ALJ's decision. *See* [Attachments] to Statement of Errors at Page ID ## 373-422. I have construed those attachments as a motion for remand for the consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g).

For the reasons that follow, I conclude that the plaintiff fails to make the showing necessary to warrant a sentence six remand and that the ALJ committed no error on the record available to her. Accordingly, I recommend that the court deny the motion for remand and affirm the commissioner's decision.

## I. The ALJ's Decision

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 13; that he had the severe impairments of degenerative disc disease of the lumbar spine, status post a mid-line laminectomy at L2-3, L3-4, L4-5, and L5-S1, and degenerative disc disease of the cervical spine, Finding 3, *id*.; that he did not have an impairment or combination of impairments that met or equaled in severity any of the Listings, Finding 4, *id*. at 14; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could frequently balance and climb ramps and stairs and occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds, Finding 5, *id*. at 15; that he was capable of performing his past relevant work as a construction inspector, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id*. at 19; and that he, therefore, had not been disabled from June 2, 2014, his alleged onset date of disability, through July 15, 2016, the date of the decision, Finding 7, *id*. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final

determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

## II. Motion for Sentence Six Remand

### A. Applicable Legal Standard

Sentence six of 42 U.S.C. § 405(g) provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]

42 U.S.C. § 405(g).

Typically, a request for a sentence six remand concerns "new evidence . . . tendered after the ALJ decision." *Mills v. Apfel,* 244 F.3d 1, 5 (1st Cir. 2001) (citation and internal quotation marks omitted). Sentence six allows for a "pre-judgment remand" and obviates a ruling on the existing administrative decision based on the existence of good cause for remanding for further evidentiary proceedings. *See, e.g.*, *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Freeman v. Barnhart,* 274 F.3d 606, 610 (1st Cir. 2001).

On a cautionary note, the First Circuit has observed that "Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided — to the end that the process not bog down and unduly impede the timely resolution of social security appeals." *Evangelista v. Sec'y of Health & Human Servs.,* 826 F.2d 136, 141 (1st Cir. 1987). Thus, prejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is new and "material," as in "necessary to develop the facts of the case fully[.]" *Id.* at 139.

New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of

the evidence is essential to a fair hearing, *see id.*; in other words, that the earlier decision "might reasonably have been different" had the evidence been considered by the commissioner, *id.* at 140 (citation and internal quotation marks omitted). There is a temporal concern, as well. The evidence must be material to the issue of "the claimant's condition during the time period for which benefits were denied[,]" as opposed to the development of a new disability. *Tirado v. Bowen,* 842 F.2d 595, 597 (2d Cir. 1988).

**B. Discussion**

The plaintiff appends three categories of documents to his statement of errors: (i) duplicates of treatment notes that are already of record, *compare* Attachments at Page ID ## 377-84, 418 *with* Record at 267, 294-97, 300-03; (ii) treatment notes from 2010, 2011, and 2015, well before the ALJ's July 15, 2016, decision, *see* Attachments at Page ID ## 416-17, 419-22, and (iii) treatment notes created near or after the date of the ALJ's decision, some of which are explained in handwritten notes by the plaintiff, *see id*. at Page ID ## 373-76, 385-415.

Duplicates of existing record materials plainly are not new and, therefore, cannot serve as a basis for a sentence six remand. *See, e.g., Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) ("The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from a sentence four remand], appropriate when the district court learns of evidence *not in existence or available to the claimant at the time of the administrative proceeding* that might have changed the outcome of that proceeding.") (footnote omitted) (emphasis added).

For similar reasons, a claimant cannot obtain a sentence six remand based on the proffer of documents that were available for inclusion in the record before the ALJ without demonstrating good cause for his or her failure to incorporate them into the record at that time. *See, e.g*., 42 U.S.C. § 405(g). The plaintiff, who was represented by counsel during proceedings before the

4

ALJ, *see* Record at 39-40, offers no explanation for his belated proffer of those materials, *see generally* Statement of Errors.

Moreover, to the extent that documents in this category touch on the discovery in 2015 of spots on the plaintiff's liver, *see* Attachments at Page ID ## 416-17, they are, as the commissioner notes, immaterial for two reasons, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 23) at 11. First, the plaintiff has never alleged disability stemming from a liver impairment and, second, to the extent that he supplies this evidence to support his concern that injections were contributing to liver complications, it is unavailing because he continued to receive injections following the discovery of liver spots.

Finally, the plaintiff falls short of demonstrating that the challenged decision might reasonably been different had the commissioner considered the third category of documents: those created near or after the date of the ALJ's decision. As the commissioner observes, *see id.* at 10, the majority of these materials reflect that the plaintiff continued to seek various types of injection therapy treatments, providing relief from pain related to his lumbar and cervical degenerative disc disease, *see* Attachments at Page ID ## 385-415. They are, therefore, cumulative of the treatment records available to the ALJ.

The final category of materials also includes a report of a January 21, 2018, cervical spine MRI stating that "[t]he most significant pathology is at C3-4 where there is posterior disc osteophyte complex and moderate severity acquired spinal canal stenosis and severe left-sided neural foraminal encroachment with potential for left C4 nerve root impingement." Attachments at Page ID ## 374. At oral argument, the plaintiff contended that the 2018 MRI is significant because he finally received a definitive diagnosis for his longstanding neck pain, calling into question the ALJ's finding that his impairments did not meet Listing 1.04.

Accepting at face value the plaintiff's representation at oral argument that his neck condition has not changed since 2010, the new MRI evidence bears on his condition during the relevant time period, from June 2, 2014, through July 15, 2016. Nonetheless, it is immaterial.

At Step 2, the ALJ had already found that the plaintiff had a severe cervical degenerative disc disease impairment. *See* Finding 3, Record at 13. The new MRI would not have altered that finding. Nor was the new MRI likely to have changed the outcome at Step 3. Listing 1.04(A) requires, among other things, that a claimant provide "[e]vidence of nerve root compression[.]" Listing 1.04(A). The 2018 MRI was interpreted to demonstrate the "*potential* for left C4 nerve root impingement[,]" Attachments at Page ID # 374 (emphasis added). A finding of "'potential' nerve root impingement" does not suffice to meet the listing. *Langley v. Colvin*, No. 1:16-cv-00064-JDL, 2016 WL 7477537, at *2 (D. Me. Dec. 29, 2016) (rec. dec., *aff'd* Feb. 10, 2017).

The only remaining issue, at Step 4, was the degree of functional impairment caused by the neck condition for the period from June 2, 2014, through July 15, 2016. Nothing in the more definitive 2018 MRI, or indeed in any of the documents postdating the ALJ's decision, calls into question the ALJ's findings on that point.

The plaintiff, hence, fails to demonstrate his entitlement to a sentence six remand.

### III. Statement of Errors

#### A. Applicable Legal Standard

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

The plaintiff's bid for remand also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that his impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 404.1520(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 404.1525(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

## B. Discussion

Apart from presenting new evidence, the plaintiff seeks remand on the basis that the ALJ erred in several respects: by (i) ignoring his neck condition, (ii) finding no evidence of nerve root entrapment or impingement, as a result of which she wrongly concluded that his spinal impairment did not meet Listing 1.04(A), (iii) relying on a failure to seek treatment for which he now offers an explanation, (iv) failing to consider the full record, and (v) relying on notes of conversations that he had with his treating doctors that may not have been accurately recorded. *See* Statement of Errors at Page ID ## 368-72. For the reasons that follow, these points are unavailing.

### 1. Ignoring Neck Condition

The plaintiff first complains that the ALJ ignored his longstanding, well-documented neck condition, particularly in determining the severity of his impairments and his residual functional capacity ("RFC"). *See id.* at Page ID ## 368-70. As the commissioner notes, *see* Opposition at 3-4, he is mistaken.

The ALJ determined that the plaintiff's neck condition (degenerative disc disease of the cervical spine) was severe and took it into account in determining his RFC, discussing his allegations of difficulties caused by his neck and lumbar degenerative disc disease, his activities of daily living, his treatment history for both conditions in Arizona and Maine, and the only medical opinions of record concerning the limitations imposed by the plaintiff's neck and lumbar degenerative disc disease, those of agency nonexamining consultants J.H. Hall, M.D., and Donald Trumbull, M.D, and examining consultant Frank A. Graf, M.D. *See* Finding 3, Record at 13; *see also id*. at 15-18, 70-71, 82-84, 304-11.

On initial review, Dr. Hall deemed the plaintiff capable of lifting up to 50 pounds occasionally and 25 pounds frequently, with only one postural limitation, to occasional stooping. *See id*. at 70-71. On reconsideration, Dr. Trumbull deemed him capable of lifting up to 20 pounds occasionally and 10 pounds frequently, with limitations in his ability to climb, balance, kneel, crouch, and crawl as well as stoop, noting that the assessed limitations stemmed in part from the plaintiff's neck impairment. *See id*. at 82-83. Neither Dr. Hall nor Dr. Trumbull found that the plaintiff's impairments met or equaled a listing. *See id*. at 69, 81. Finally, Dr. Graf found that the plaintiff's lumbar spine impairment met Listing 1.04 and that, although his neck impairment did not meet a listing, it affected his functioning. *See id*. at 307. He deemed the plaintiff capable of

lifting up to 20 pounds occasionally and 10 pounds frequently, but assessed a greater number of additional limitations than had Dr. Trumbull. *See id*. at 308-11.

The ALJ stated that she gave little weight to either the Hall or Graf opinions, *see id*. at 18; however, as the commissioner points out, *see* Opposition at 5, her RFC assessment matches that of Dr. Trumbull, *compare* Finding 5, Record at 15 *with id*. at 82-83.[2]

The plaintiff, thus, is mistaken in arguing that the ALJ ignored his neck condition. *See* Statement of Errors at Page ID # 368-70. He, therefore, fails to demonstrate that remand is warranted on the basis of this point of error.

### 2. Finding That Plaintiff's DDD Did Not Meet Listing 1.04

The plaintiff next asserts that the ALJ erred in stating that imaging of his lumbar spine following lumbar decompression surgery in 2010 "revealed no further evidence of nerve root entrapment or nerve root impingement." Statement of Errors at Page ID # 370; Record at 14. He points out that, as the ALJ stated later in the same paragraph, Brett Applebaum, M.D., who reviewed an April 3, 2015, MRI of his lumbar spine, "noted post-surgical changes within the right lateral recess at L5-S1 that may, though not definitively[,] displace the right S1 nerve root." Statement of Errors at Page ID # 370; Record at 14 (citation omitted).

The ALJ made the finding at issue in the context of considering, but rejecting, Dr. Graf's opinion that the plaintiff's lumbar degenerative disc disease met Listing 1.04. *See* Record at 14, 307. "[I]t is the burden of the [claimant] challenging the commissioner's decision to identify evidence in the record that, if properly considered, could support a conclusion that

---

[2] The ALJ deemed the plaintiff capable of light work as defined in 20 C.F.R. § 404.1567(b). *See* Finding 5, Record at 15. Light work is defined therein as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 1567(b). Dr. Trumbull found the plaintiff capable not only of lifting up to 20 pounds occasionally and 10 pounds frequently but also of standing, walking, or sitting for up to six hours in an eight-hour workday and of unlimited pushing and/or pulling up to the limits he imposed for lifting and/or carrying. *See* Record at 82-83.

9

the claimant's impairments do meet or medically equal a giv[en] [l]isting." *Darcy N. ex rel. Richard N. v. Berryhill*, No. 2:17-cv-00374-NT, 2018 WL 2552163, at *10 (D. Me. June 3, 2018) (rec. dec., *aff'd* Sept. 7, 2018) (citation and internal quotation marks omitted).

Listing 1.04(A) requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]" Listing 1.04(A).

As the commissioner notes, *see* Opposition at 6-7, evidence that post-surgical changes "may" displace the nerve root does not amount to a showing that a claimant has "nerve root compression[,]" as required to meet Listing 1.04(A), *see, e.g.*, *Langley*, 2016 WL 7477537, at *2.

In any event, even if that element had been satisfied, the ALJ also found that the plaintiff had failed to show that he had "motor loss (atrophy with associated muscle weakness or muscle weakness)[,]" noting that Dr. Graf himself had found no objective evidence of motor loss on examination. Record at 14, 302, 306; Listing 1.04(A). The plaintiff does not separately challenge this finding.

The plaintiff, hence, falls short of demonstrating his entitlement to remand on the basis of this point of error as well.

### 3. Explanation for Not Obtaining Treatment

The plaintiff next asserts that he has an explanation for the fact noted by the ALJ that he sought no treatment after January 4, 2016: that he learned he had spots on his liver that he believed had been caused by his longstanding steroid injection treatment. *See* Statement of Errors at Page

10

ID ## 370-71. However, he identifies no evidence that he offered this explanation to the ALJ prior to the issuance of her decision. Thus, she cannot be faulted for failing to take it into consideration.

In any event, even if the plaintiff had explained this to the ALJ, it would not have changed the outcome of her decision. She highlighted the gap in treatment in the context of explaining why she declined to adopt Dr. Graf's opinion that the plaintiff's degenerative disc disease met the criteria of Listing 1.04. *See* Record at 14-15. As discussed above, she articulated other bases for rejecting the Graf opinion, most notably that the plaintiff's impairment did not meet the requisite objective criteria. Whether the plaintiff had a good reason for ceasing treatment for a period of months, thus, would not have altered the outcome.

### 4. Failing To Consider Full Record

The plaintiff next contends that the ALJ failed to consider the entire record, both because she failed to consider his neck condition and because he did not see his entire record in the "court transcript." Statement of Errors at Page ID # 371. As discussed above, the ALJ did not ignore the plaintiff's neck condition. As concerns the record's contents, the commissioner correctly notes that the plaintiff was represented by counsel before the ALJ, who discussed specific portions of the record, indicating her familiarity with them, and stated that she had no objection to the admission of the exhibits recited by the ALJ. *See* Opposition at 8; Record at 39-41. In any event, the plaintiff fails to identify any exhibit that he contends was omitted, let alone explain its significance. He, accordingly, fails to demonstrate his entitlement to remand on the basis of this point of error.

### 5. Reliance on Notes of Conversations with Treating Doctors

The plaintiff lastly complains that the ALJ relied on "information [i]n medical records that include conversations with doctors and nurses that may not be accurate[.]" Statement of Errors at

Page ID # 372. He states that he did not read those reports until now and discovered that some of the statements are subject to interpretation and "should be verified by both doctor and patient if to be used as fact." *Id.* He does not explain which ones. *See id.*

This is too little, too late. The plaintiff, who was represented by counsel before the ALJ, does not explain why these points could not have been clarified before the record closed. Nor does he explain how any clarification, if timely provided, likely would have changed the outcome of the ALJ's decision. *See* Statement of Errors at Page ID # 372.

He, accordingly, fails to demonstrate his entitlement to remand on the basis of this last point of error.

## IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for a sentence six remand be **DENIED** and that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 3rd day of November, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge